Good morning, Your Honors, and may it please the Court. I'm Barry Kramer on behalf of the plaintiffs here. I will try to briefly cover a few of the more significant issues. I'd like to start out by saying that this case is not really about arbitration. What it is about is the elimination of class action liability. It's the class action waiver that is really the fundamental problem in this case, and it's an attempt by a defendant basically to have their get-out-of-jail-free card, which was recognized in the Discover Bank case. Essentially, if you eliminate the ability of small consumers to proceed on a group basis, you've basically eliminated their chance to have any reasonable recoveries in a whole myriad of different kinds of cases, particularly this kind here. The Court below, when it first addressed this case, made the following statement. Let me begin by saying this is a very close question for this Court. Then he proceeded, and a little bit later he said, let me begin by asking a few questions. It's very short. I am affected by the fact that the District Court has previously ruled on this matter in factual conditions quite close. I suspect you're going to say that you've altered the factual conditions and focused more on California, and that's an important issue for me. But I'm not inclined to alter the rulings of at least one or maybe two of my colleagues who have ruled on this very recently. At that time, I did explain to the Court that there was a huge fundamental difference because the law has been shifting in this area generally, and what I perceived was that the law was shifting away from national class actions because of differences in state law. The two cases that the Court relied on from his colleagues were two cases, one called Eagleton, one called Lowman. They're in our briefs. But both of those were national class actions. Both of them were brought under foreign law. Both of them were not good authority, and I tried my best to explain the difference that we had a California action filed in California, California plaintiff, California statutory law, California class only. And, of course, this changes the equation as to where the materially greater interest lies between California and, in this case, South Dakota. When you've got a national class action, yeah, what point does California have in deciding this case on behalf of a Texas resident against a South Dakota bank or a Nevada resident? But when it's strictly a California versus a South Dakota bank, the interest of California with its own statutory law is a completely different situation. And the Court did not apply the correct criteria. Its first statement in its ruling under the discussion, it says, where the underlying agreement contains the choice of law provision, the law of that forum governs as to the substantive claims. And that's simply not a correct statement of the law. It completely ignores the whole choice of law analysis and the restatement. So under California choice of law rubric, what's the first question that's asked? I think you have your Ned Lloyd analysis. Is there a valid – well, I would have to – Is there a valid policy? Yeah, you have to start out by asking if – certainly if there's a valid arbitration agreement. But in the choice of law – in the choice of law analysis, you – That's not quite the question. Yeah, I don't have it off the top of my head. Did you present it to the district court so that he could get it right? Oh, yeah. Yeah, the Ned Lloyd analysis was fully presented. And the court recognized, it stated that the other courts had followed, properly followed the Ned Lloyd analysis. And that was the court's only statement on the issue. And when the court stated that, it made no analysis itself. And it – and the other courts actually had not made any proper Ned Lloyd analysis. They had not considered the interests of California. So what was the debate in the – before the district court as to whether or not California's interests outweighed that of South Dakota? That should have been what was – what was looked at. But the court didn't really focus on that. The court was – I mean, there was not a great deal of discussion as to the fine points of California law. There was a great stress on the difference. What is, then, if it wasn't argued there, analyzed there, I should say, what do you say is the greater California interest here? Why doesn't South Dakota have a historian? Sure. It was well spelled out in our briefs. And I'm sure that was argued. But Judge Fischer is asking you what it is, not whether it was spelled out in your briefs. What it is. I can read your brief. Okay. I don't understand how you're articulating it today. Right. The greater interest for California. You have credit cards that are held by California residents. They're making California purchases. The payments made on those credit cards come out of California. The income to pay those credit card bills are out of California. California has a very strong interest in protecting its own citizens and providing them a forum where they can be heard. In California, the conclusion in Discover Bank and, as a matter of fact, several Ninth Circuit cases following Discover Bank, all basically say that California has a strong interest in providing a forum for its citizens to get an appropriate remedy. And this is labeled by Discover Bank a fundamental interest. And the Ninth Circuit cases. What about South Dakota's interest? South Dakota's interests are those of a state that has a large company that locates there. It operates all over the country. It's more a matter of the kind of interests that you'd have for issuing stock, for seeing that the company's acting appropriately. South Dakota's interest, actually, in seeing that its banks and other corporations follow and act justly toward other people throughout the country, should be the same on that scope as California. It should have no interest in promoting unfair or improper conduct. Is one of South Dakota's interests the interest in seeing its own legislation upheld? I mean, this is the expression of the will of the people through its legislative body in South Dakota. And it seems to me you're asking us effectively to repeal South Dakota law. No. I'm not asking. Isn't that an interest? No. It certainly is an interest. There's no doubt that South Dakota, and the cases, there's extremely good, very close case law authority on these matters. For example, recent case, and they're Ninth Circuit cases, Brazil versus Dell. Same question where it denied enforcement of Texas law. Almost an identical kind of issue. This is an August 3, 2007 case. Had the case that we're looking at today been decided three months later, it would have been decided differently. And the court all but acknowledged that. It referred in its certification of this appeal to this board. It actually listed several cases that were on the side of plaintiffs and stated that it was certainly a close call. But the court itself listed various cases. This Brazil versus Dell, that's a recent case, 2007 Westlaw 2255296, Northern District of California. It had the same arbitration kind of issue. They denied enforcement of Texas law. And if you read that case, it will come out almost identical to this case here. It goes through the applicable state law, the Federal Arbitration Act, fundamental conflict. It analyzes those things. It talks about a scheme to deliberately cheat a large number of consumers. It reviews the greater interest of the states. And it says, reading from the case, although it is a close call, the court nevertheless finds that California has stated a strong interest in protecting its citizens from take-it-or-leave-it agreements that incorporate one-sided protections. It cites to Klussman. Kennedy. What do you say about, on that regard, doesn't the Citibank have the option to opt out of this proviso? Can you please state that? No, there is no option to opt out. If you want to reject the agreement, they will close your credit card. Granted, they don't do it that day. Oh, no, they allow the agreement to run for its length. And then they just don't renew. For a limited period of time. What's the limited period of time? The length of the agreement. They have either the date on your credit card, which may expire, you know, either that or the end of the year, whichever comes later, is what they state. There could be as many as three or four years. At that time, I don't think they were issuing credit cards for three or four years. They normally issue them annually. But it could be a year. Well, none of that's on the record. That's not on the record. I don't know how long, if there is any specific date. I don't know that that's in the record at all. The way I read it, they were honoring the agreement, the existence of the agreement. Till the agreement expired. Sure. And what's exciting about that? I mean, that doesn't seem to be an improper. Well, you would, in essence, when you develop a credit card account and you are going to lose that, whether you lose it in some cases, it might be a few months, maybe it would be a couple years. In some cases, it might be three years. It might be three years. So you can opt out. That's the difference between this case and Brazil, right? But if you opt out, then you're faced with potential higher increase in interest rates, which they can do. Where's that in the record? It's in their credit card agreement. Their credit card agreement is in here. No, I understand that. But you're arguing now that if the harm of the opt out is that you're faced with potentially higher interest rates with another card. Where's that in the record? And the same provision with the class action. It doesn't do you any good to opt out because all of the credit cards basically have this. What do you mean it doesn't do you any good? If you opt out, what happens? You continue with your agreement until it expires. Or they may increase your rate next month if you opt out. You don't know. They have the right to increase your rate any time they wish. They simply send you a note, your rate is going up. There's a penalty to opting out. It's not a matter where they say, do you want arbitration or you don't want arbitration. That would be a free choice. They're not saying that. They're saying this is the contract, this is our statement. If you don't want arbitration, then we're going to close your account as soon as it would normally expire and not renew it. You have about an hour left. Do you want to save it for a vote? Yes. Thank you. Thank you. Good morning, Your Honors. Julia Strickland of Strickland-Strickland-Levan for Citibank. This case is not a referendum on class actions. This case involves the enforceability of a choice of law provision that is included in Citibank's credit card agreement. The issue that's presented by the decision below and based upon this Court accepting review of the decision is actually quite limited. And it is limited to the enforceability of the South Dakota choice of law provision. The parties here indisputably chose South Dakota law to govern their relationship. The parties, you mean the credit card holder? The credit card holder and city. The agreement from inception. That was a heavily negotiated agreement, I guess. Well, it may not have been heavily negotiated on the other hand. It wasn't negotiated at all. It may not have been on the other hand. They didn't have to take the card. It wasn't negotiated. It's a take-it-or-leave-it card. I mean, you don't say, all right, let's apply Idaho law or Montana law. Let's find some State that we can all agree on if we don't like South Dakota or California. That never occurs. You have to concede that. I will concede that. I'm not going to debate with you whether this was negotiated. It wasn't negotiated. But, and critically, there was a right to not participate in having this card. You didn't have to take the card with the South Dakota law provision. So is that it? As long as there's freedom of choice in the marketplace, then a take-it-or-leave-it provision is automatically not unconscionable under California law? Well, this wasn't a take-it-or-leave-it provision. Under California law. This wasn't a take-it-or-leave-it provision even under California law. I'm sorry. How do you – if your choice is to take the card or leave the card, how is that not a take-it-or-leave-it proposition? As to choice of law, perhaps, take-it-or-leave-it. That's what we're talking about, counsel. But on arbitration, it was not take-it-or-leave-it. You could opt out. Wait a minute. Wait a minute. Back up to where you started out. You said that your opening line was that these parties agreed, the parties agreed to South Dakota law. Then you said they didn't have to take the card if they didn't like that. And then you said, but that's not take-it-or-leave-it. Now, what's – what am I missing? Your Honor, I was responding to your question about the card in general. No. I was asking about your argument and following your line of analysis, because certainly one of the things that California law looks to is relatively – relative bargaining power and unconscionability of adhesion contracts, does it not? It does, indeed. Okay. And do we apply California choice of law to this case? We do apply California choice of law. All right. As articulated in Medloyd and Washington Mutual. All right. So would you agree that under that aspect, the card is unconscionable because it's a take-it-or-leave-it proviso? I would not, Your Honor, because there are several pieces to the unconscionability analysis of which that is only one. On that aspect, California would come down and say that is a take-it-or-leave-it proviso. So, therefore, we're going to weigh that against South Dakota under the choice of law analysis. That is true. Thank you. But it does not conclude the unconscionability. You know, you start off taking it piece by piece, and so let's take it piece by piece. Don't overreact. Let's just take it piece by piece, okay? Which I am happy to do, and we'll proceed with that. But, I mean, the first piece is that California is entitled to take that piece of the puzzle into consideration, and that piece of the puzzle is unconscionable. It's a take-it-or-leave-it adhesion provision on choice of law, right? I wouldn't go as far as Your Honor would say in terms of it being unconscionable, because under California law, there are two pieces to the unconscionability analysis. That piece only goes to procedural unconscionability, not to substantive. Right. And that piece, it would qualify under California law as procedurally unconscionable. Absolutely. Seeing a grandpa. Okay. Thank you. I have seen a grandpa. So have I. Yes, we all agree. Okay. I thought that this would be an opportune time to respond to some of the panel's questions, which go to exactly this point, which is, the agreement did provide for South Dakota law, and there are profound reasons why that is the case. Citibank is a national bank with national operations, and it's headquartered in South Dakota. It is unworkable to have a credit card agreement, or for that matter, any agreement, which is potentially governed in all respects by the law of 50 states. The South Dakota legislature, as has been pointed out, actually endorses just this kind of agreement. It is South Dakota in which this bank is headquartered. If one were to ignore the South Dakota governing law provision, the implications are enormous. Well, that's true for any national company that has to face this. This isn't. This isn't. It's workable. They deal with it. I mean, it may be cumbersome. It certainly argues in Citibank's favor that it needs to, well, for the effective promotion of its business, it can have a uniform standard of law, but it's not unworkable, I would say. But it certainly does not rise to the level of California having a materially greater interest, which is the issue here, on the third prong of the Medloyd analysis. Responding to Your Honor's question, the Medloyd analysis has three prongs. The first is, is the law that's chosen a law that has a substantial relationship to the transaction? Yes. Of course. And everyone concedes that. Which means you move on to the next prong of the analysis, which is the fundamental public policy, or, as in Discover II, if California does not have a materially greater interest, you can actually even skip over the fundamental public policy issue, which has probably more hair on it than the materially greater interest analysis. Not because I don't think we're right on that issue, but it's a more cumbersome analysis than materially greater interest. And we would submit, it's not that California doesn't have an interest. No one disputes that California has an interest in protecting its citizens. The question is whether California's interest rises to the level of being materially greater than South Dakota. And to what extent does California have an interest in allowing citizens to avoid circumstances where the hit on each individual is sufficiently small that there's no transaction litigation, excuse me, litigation individually, that the only way that there would be any enforceability of California's interest in that regard would be through a more collective action? Well, California may have an interest. The question is whether it's materially greater. And California's interest, we would submit, is not materially greater because Citi is a South Dakota company. This issue has been legislated in South Dakota. Arbitration agreements are enforced according to their terms in South Dakota. The courts that have addressed the enforceability of South Dakota law in Citi's agreements have concluded, including in South Dakota, that the agreement is enforceable. There are important principles of comity here, which I would suggest that California and South Dakota share. I think that the State of California, were the tables turned, the State of California would not be particularly enthusiastic in having a different state undoing contracts where its governing law is applied. So California, looking at this, would say a South Dakota legislature, which is not representative of California's citizens, has decided that its companies who wish to do vis-a-vis a national out-of-state company will have greater or lesser rights than a citizen who is dealing with an in-state domestic company. I think, Your Honor, that actually the California Supreme Court in the advanced bionics case said it extremely well, which is, and I quote, the choice of law is not simply a matter of determining which conflicting law manifests the better or the worthier social policy, but about giving full faith and credit to the laws of our sister state. Well, that's great, but I mean, nobody's disputing that. The question is, as you say, it's a matter of balancing. So I'm trying to understand the perspective of California looking to a national out-of-state company, which chooses to do business and profit substantially off of We are going to defer to South Dakota's choice there. I mean, if it was automatic, we wouldn't be in this courtroom today. It isn't automatic. There's a weighing. So I'm just trying to understand what your response to that weighing is. My response is that California may not like that, but I think California would do it based on principles of comedy. Well, let's take a hypothetical. Let's say that the California legislature had outlawed these type of provisions, just banned them, said that they're illegal in California. Would that change your analysis? Probably would not change my analysis, although it, let me take that back. It may change my analysis, only in the sense that you probably don't get to the materially greater interest prong of the test. If California bans the provision, the legislature acts, it now is probably a fundamental public policy. So you never get to the balancing on materially greater interest in that prong. But that's not the case here. Counsel, the obstacle that I have in connection with your argument is Schroer v. New Singular, a case which I'm sure you've read. I have, indeed. And in that case, it seems to suggest that we have taken a position on the interpretation of California law that requires us to ask three questions. Bing, bing, bing, and that's the answer. It seems that if we follow the three Schroer questions, you lose, to put it bluntly. How do you cope with Schroer? Well, Schroer is not our case. For starters, Schroer did not allow an opt-out from the arbitration provision. And no matter how you frame the question, at the end of the day, we keep coming back to the arbitration provision. The Schroer case was truly a take-it-or-leave-it arbitration clause. Also in Schroer, choice of law was not at issue. That case did not engage in a choice-of-law analysis. The parties agreed that California law applied to their dispute, both of which are absolutely critical to see what the factor is here. But isn't the test similar in terms of deciding which law governs? I mean, you have the double hit of unconscionability and then unconscionability. And it seems that the Schroer case is telling us what unconscionability in this context means under California law. But I would submit that it does not, because the Schroer case did not have an opt-out. And the opt-out changes the unconscionability analysis in a very material way. Here, the opt-out was a meaningful opt-out. You didn't have to take the card in the first instance, nor, one, if you had the card, you didn't give up the card. In essence, your rights were not affected by exercising the opt-out. In Ms. Hoffman's situation, if she had opted out, she would have kept the card through the term of the card, through the term of the agreement. Breyer. And then it's not renewed. I'm sorry? Then it's not renewed. Then it's not renewed. But you keep it through the term of the agreement. You continue to be able to use the card. It's not like you have to stop using it. You have all of the rights that you have as a cardholder to continue to use the card. And, importantly, after the expiration date of the card, you get to continue to pay off your balance under the same terms. It's not like there's, to use, you know, sort of a mortgage-related term, a balloon that comes up at the end of the term. For payoff purposes, you keep the card and pay it off under the existing terms. So there's no harm at all to exercising your opt-out right, because you get to keep the card through the agreement's term. And in analytical terms, what does that mean? That means that you have a meaningful choice, and it's the only kind of meaningful choice you can have in the commercial world. I mean, in essence, if you say that that opt-out is not a meaningful choice, there becomes no way to have a commercial enterprise that does business nationally do anything but have a take-it-or-leave-it agreement. It is the only effective way of dealing with the issue. And, I might add, an opt-out is recognized in Rule 23. We're here talking about class actions. Rule 23 endorses an opt-out as a meaningful choice. An opt-out is a traditional class action mechanism for class members excluding themselves. I'm not sure how that argument cuts. Yeah. And I don't want to waste your time. Why would that? I don't understand why would that have unconscionability at all. I mean, I don't understand that at all. Because you're talking about the rights of people to join or get out of a class action. You're not talking about getting in or out of a contract. But the notion of unconscionability, I mean, The opt-out really goes to the procedural unconscionability part. The class members, the putative class members in Rule 23 have not opted into a class at all. There's been a class created against their interests potentially, and they want to get out of it. They didn't agree with the class to start the suit. I don't understand the analogy. But they're bound by what happens. My point is really the following. On procedural unconscionability, the standard, in part, is whether you have a meaningful choice. And the opt-out is the only way to create a meaningful choice. You cannot agree. That's a meaningful choice. Well, it may not be meaningful if what happens is if you opt out, you're not going to do any better. You can't do any better because it means you have to mount an individualized lawsuit. And the only time you'll opt out is if you think you can get a better deal, and that's if you can either have a subgroup that's solidified or you think you can get bigger damages, penalties, whatever. So I don't follow the analogy. Well, let me say that on the point of the options, if you opt out and you can file an individual lawsuit, five circuits believe that this is an appropriate procedure, as do the majority of the courts in the country. So I understand that the Ninth Circuit is not necessarily of that same mind, although the exact issue presented here has not been presented to the Ninth Circuit before, because the cases that have been before the Ninth Circuit on this issue have not involved opt-outs and in the main have not involved choice of law provisions. Other cases involve State class as opposed to a national class? Some yes and some no. But I don't think this fact that it's a California-only class actually alters the analysis, because the point is that is an issue of pleading manipulation, to be fair. And ---- It's just defining the class. It's defining the class, but it's also manipulating the pleadings in an effort to avoid an outcome. I don't understand your point. I mean, plaintiffs, by their own admission, say that the reason they did this this way was to, quote, avoid the potential for negative treatment. Well, of course, because we are, in terms of a class action analysis, we look at it differently. If it's a nationwide class, then we do. If it's a more particularly defined class, that has nothing to do with manipulation. But for this ---- I mean, that has to do with class action analysis. Yes, but for this ---- except for this purpose, which is on a choice of law analysis, it really ---- I mean, I argued the Discover II case. It was a nationwide class. Even if it's manipulative, who cares? That's the issue in front of us. Because at the end of the day, whether it's a California-only class or a nationwide class for the choice of law analysis doesn't make any difference. Because the implications here of a decision that California law controls mean that 50 states now make 50 different decisions, and it's completely unworkable. California has an interest. No one questions that California has an interest in protecting its citizens. Counsel, I don't understand your argument. The fact is, is if California wants to look at it through California's prism, it can weigh in that balance of the effect on its citizens. It's not looking to the effect on Nevada or Arizona or anybody else. Now, that doesn't mean they ignore in the balancing the fact of what you're arguing from South Dakota's standpoint, which is ---- or from Citibank's standpoint, is now a South Dakota corporation now has to deal ---- it's just like the EPA waivers on smog control and the like. But to say it's manipulation, it certainly has something to do with trying to adhere to and define your case in terms of representing California citizens' interests. That's not manipulation. You may disagree that it has any dispositive impact, but the question as to whether it's irrelevant seems to me just wrong. Well, as to materially greater interest, which is really the prong of the test that this conversation goes to, the point of the matter is California has an interest. No one is disputing that. But the test is whether California has a materially greater interest than South Dakota. And we would submit that California's interest is no different than the interests of the 48 other States other than South Dakota. But if California's interest is greater, what flows from that premise? If California's interest is materially greater, what flows from that is that we did the analysis actually in the wrong order and that we would have to go back to the fundamental public policy issue and evaluate whether California has a fundamental public policy that's in play here. What I hear you saying is that, in street language, this isn't unconscionable because you have choices. You can take the new program. If you don't, you get to run out the old program exactly as you signed up for it in the first place. Is that right? That is true. And that's the difference between this case and all other cases? That's not the only difference, but that certainly is the substantial difference. That's the central difference. That is the central difference. And under California law, that makes it not unconscionable. That is the central difference, but not the only difference. That's correct. Thank you, Counsel. Thank you. A couple comments here. It seems like the court is largely focused on the opt-out provision, which goes to your procedural unconscionability. As a practical matter, what happens, a card member is sent a notice and may or may not see that notice? Well, you know, we've read all the notices in this case, and I think it's kind of misleading to say it's just a stuffer deal. I mean, how else would you do something like this in the modern economy with huge international companies? Perhaps the same way as when you sign up for your credit card. You have to call in and give them your phone number or sign from your home phone or something where you call in before that card becomes effective. There's no difficulty if the credit card company truly wanted to provide notice that they would. What they do do is they send out- Do you know what the call-in factor rates are on things like that? Probably minuscule. Yes, probably as small as the opt-out rates, because literally anything can be enforced. When you get to talking about procedural unconscionability, which is really what you're talking about when they say, oh, you have the right to opt out, you're really talking about procedural unconscionability, and that can come from many steps. First of all, in California, it's not even necessary because Discover Bank says that this was an exculpatory clause, so you don't even need procedural unconscionability to knock out the arbitration agreement. I'm curious what the endgame is in all of this. A, if they had given notice before they imposed this new agreement, new interest rate, and the credit card holder says, I don't agree to it, then what's the effect of that? If the problem- What's the effect of that is the question. The effect of that. Of the card holder saying, I don't agree. Right. Well, for that card holder, then he will have his card terminated at the end of a certain period of time. So the agreement expires. That's what happens to agreements. Right. So how is that different from the opt-out? Is just the opt-out is too passive? The opt-out is designed, and the Ting case covers that perfectly, and that's the Ninth Circuit case. It talks about a negative option. A negative option is where the person getting- If you take this case to trial- Yes. The argument is going to be what? That the proper procedure would have been an affirmative action, the conclusion of which, had they not agreed to the interest rate, would have been that the card would have terminated upon its expiration date. I would- So they would then, if they wanted to continue to do business with Citibank, they would have had to agree in the next go-around to the higher interest rate. Correct? I would say that this kind of agreement, because of its high degree of substantive unconscionability, that is- Are you saying that Citibank couldn't, at the end of the term of the agreement, raise the rates, change the rates? No, it has nothing to do with the rates. What do you mean, substantive unconscionability? They can raise the rates any time they wish. That's not the problem. They have to give proper notice to do it, but they can raise the rates. The problem is that this arbitration agreement goes far beyond having anything to do with rates. It involves every aspect. They could simply send you out- That's what you're suing on. You're not going to go in and say that they can't-are you saying that they can't arbitrate anything under this agreement? I'm saying that the class action waiver provision is unconscionable, period. As to any dispute? As to any dispute, the class action waiver under California law basically is an exculpatory provision regardless of how- Now, we've alleged-we haven't proven-we've alleged that they're cheating you out of money. That might have been in many different ways. But assuming that the allegations of the complaint are true, what they're basically doing is they're saying that you have no remedy. Now, I've handled cases against credit cards for more than one single issue. There's been many issues, all of them. All of the cases that I've ever won with credit card companies, which is one or settled over ten of them, none of them could proceed, and they would have all been lost. The customers would have zero rights. We don't know what those cases are, and I'm not sure how relevant they are, but- They were credit card cases- It's not on the record, so we can't consider what you did. It's not relevant. What is relevant is that it's an exculpatory provision regardless of the facts. So if you find in their favor on this case, it may come back with another case that they've literally cheated people. We've complained. We've said they've done that. But let's say that they just stuck in something and slipped it in. You're going to pay $5,000 to us at the beginning of the year to have your card, and you agree to it, and it's non-negotiable. So what? Then you can resist that simply by refusing to pay it. No. It gets reported to the credit card agency, and you are- And the arbitration won't give you any relief. Oh, well, let's say that instead of $5,000, let's say it's $300. Arbitration will not give you any relief because it's going to cost you more than $300 to pursue it. Do we know that? Is that in the credit card? Who pays the fees and where to locate the Nagrampa interest and all that? They have-yes, they list the provisions there, what they will pay for. But the cost provisions, I believe, are onerous in the credit card provision. Their appeals procedures are onerous. They state, even in arbitration, what it states is that in the agreement that you have before you, that if they should lose, they can appeal to a three-arbitrator panel, and the case is heard all over again. So you just wasted your time. You wasted your money. Yes, the Nagrampa argument. You're about five minutes over, and that's about the amount of time I gave your opponent. Is there anything else you want to leave us with? Yes. I would just refer you to the cases, the Klusman case, the Ostreicher case versus Alienware, the Brazil versus Dell. We've already cited them. We've already read them. And the negative option aspect is procedurally unconscionable. So there's many elements to procedural unconscionability besides what you said. The case is certainly submitted. We'll proceed to the argument on future media productions versus General Electric Capital Corporation. Thank you.
judges: Trott, Thomas, Fisher